FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2008 JAN 11 PM 1:06

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

DEBRA BEAUMARCHAIS, )
)
Plaintiff, )
)
v. ) CV 306-075
)
MICHAEL J. ASTRUE, Commissioner )
of Social Security, )
)
Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Debra Beaumarchais ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Period of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based upon claims of disability resulting from disorders of the back, as well as affective and mood disorders, dating back to April 15, 2003, Plaintiff applied for DIB and SSI on December 1, 2003. Tr. ("R."), pp. 125-27 & 396-99. The Social Security Administration denied Plaintiff's original claim, and her request for reconsideration. R. 98-

101 & 104-07. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 28-33. Plaintiff appeared at a hearing held on July 13, 2005, which was continued upon her motion so that she could be examined by a rheumatologist and orthopedist. R. 28-33 & 108-09. On February 22, 2006, the hearing reconvened, and Plaintiff, along with a vocational expert ("VE"), testified. R. 34-81. Plaintiff was represented by counsel at both hearings. R. 28-81. Thereafter, the ALJ rendered an unfavorable decision dated April 28, 2006. R. 18-27.

Applying the five step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity at any time relevant to the decision.

2. The claimant has an impairment or combination of impairments considered "severe" based on the requirement in the Regulations (20 CFR §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), and 416.971 *et seq.*), including: mild lumbar scoliosis, lupus-like aches and pains, protruding cervical disc, musculoskeletal aches and pains, and depression.

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity for medium exertional level work with occasional climbing; occasional crawling, crouching, kneeling, and stooping; should avoid working around hazards; should avoid heavily vibrating machinery. The claimant has mild limits on her ability to understand, remember, and carry-out detailed tasks and stay-on task; mild difficulties interacting with the public, co-workers, and supervisors. The claimant's past relevant work as a sewing-machine operator, as generally performed in the national economy, did not require the performance of work-related activities precluded by the claimant's functional capacity (20 CFR §§ 404.1565 and 416.965).

R. 20-27. Because the ALJ determined that Plaintiff could perform her past relevant work as a sewing-machine operator, as generally performed in the national economy, the sequential evaluation process stopped, see 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv), and the ALJ concluded that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from April 15, 2003 through the date of [the] decision (20 CFR [§§] 404.1520(f) and 416.920(f))." R. 27.

When the Appeals Council ("AC") denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 8-10. Having failed to convince the AC to review her case, Plaintiff then filed the above-captioned case, requesting a reversal or remand of that adverse decision. Plaintiff now argues that: (1) the ALJ improperly determined that she could return to her previous work as a sewing-machine operator, and (2) the ALJ improperly discounted the opinions of two State Agency psychologists.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial

evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

A.  **The ALJ Properly Determined that Plaintiff Could Perform Previous Work**

The Court first turns its attention to Plaintiff's allegation of error regarding the ALJ's determination that she could resume her previous work as a sewing-machine operator. Plaintiff argues that the ALJ's determination that she could perform her previous work as a sewing-machine operator is inconsistent with the ALJ's determination that Plaintiff "should avoid working around hazards (dangerous heights and unguarded machinery)" because this job requires exposure to moving mechanical parts.[1] (Doc. no. 14, pp. 18-20). Furthermore, Plaintiff submits that, although the ALJ based his finding that Plaintiff could resume her previous work as a sewing-machine operator on the VE's testimony that this job does not require exposure to hazards, the ALJ failed to ask the VE to identify or explain the conflict between her testimony and information provided in the DOT. (Id.). Plaintiff also argues that the ALJ failed to make any step-five findings or elicit any VE testimony on which the ALJ could have based step-five findings. (Id. at 20).

First, it should be noted that Plaintiff's step-five argument has put the "cart before the horse" because once the ALJ determined that Plaintiff could return to her prior work, the sequential evaluation process stopped. As the burden never shifted to the Commissioner at step-five of the evaluation process, Plaintiff's argument concerning what should have been done at step-five is of no consequence, unless Plaintiff can first show that the ALJ erred in determining that she could return to her prior work. See Francis v. Heckler, 749 F.2d 1562,

---

[1]The Selected Characteristics of Occupations defined in the Dictionary of Occupational Titles ("DOT") entry for sewing-machine operator states that the job requires occasional proximity to moving mechanical parts. (Doc. no. 14, p. 29).

1564 (11th Cir. 1985) (burden shifts to Commissioner to show claimant can perform other work in national economy once ALJ determines that prior work can no longer be performed). Thus, the Court will now address Plaintiff's arguments concerning the ALJ's determination that she could resume her previous work as a sewing-machine operator.

Plaintiff bears the burden of proving that she is unable to perform her previous work as a sewing-machine operator. Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Moreover, Plaintiff must show that she is unable to perform the previous type of work she performed, not merely the specific job that she held. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986) (*per curiam*) ("A claimant has to 'show an inability to return to her previous work (*i.e.*, occupation), and not simply to her specific prior job.'" (citation omitted)); see also Dudley v. Apfel, 75 F. Supp.2d 1381, 1382 (N.D. Ga. 1999) (finding that under Social Security Ruling ("SSR") 82-61, claimant can return to past relevant work if he can perform the job previously held, either in the manner previously performed, or as usually performed in the national economy). Finally, when determining whether an individual can return to her past relevant work, an ALJ must develop a "detailed description of the required duties" of that past work. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). Plaintiff does not contest the ALJ's description of her prior work, but rather contends that the ALJ's determination that she can resume her previous work as a sewing-machine operator is inconsistent with the ALJ's determination that she should avoid hazards (dangerous heights and unguarded machinery). Furthermore, Plaintiff submits that the ALJ failed to ask the VE to identify and explain the conflict between the VE's testimony and information contained in the DOT.

Plaintiff contends that the ALJ's finding that she should avoid working around hazards (dangerous heights and unguarded machinery) is inconsistent with the ALJ's finding that she can perform her previous work as a sewing-machine operator. In support of this argument, Plaintiff explains that resuming her previous work as a sewing-machine operator requires exposure to moving mechanical parts. (Doc. no. 14, p. 18). Plaintiff equates exposure to unguarded machinery with exposure to moving mechanical parts. (Doc. no. 20, pp. 2-4). As such, Plaintiff submits that the ALJ's findings cannot be reconciled because resuming her previous work as a sewing-machine operator requires exposure to hazards. (Doc. no. 14, p. 20). The Commissioner counters that the ALJ did not conclude that Plaintiff needed to avoid moving machinery and that "no medical source opined that Plaintiff would need to avoid moving mechanical parts." (Doc. no. 16, pp. 11-12). Specifically, the Commissioner submits that, in the ALJ's decision, the term "hazard" only included dangerous heights and unguarded machinery. (Id.).

Although "hazards" include "moving mechanical parts of equipment, tools, or machinery" (SSR 96-9p),[2] the ALJ did not find that Plaintiff needed to avoid exposure to moving mechanical parts. Rather, the ALJ determined that Plaintiff should avoid working around specific hazards, i.e., dangerous heights and unguarded machinery. R. 24. In making this determination, the ALJ discounted the consultative medical assessment of Dr. Jeffrey A.

---

[2]The Commissioner takes administrative notice of "reliable job information available from various governmental and other publications" including, but not limited to, the DOT. 20 C.F.R. §§ 404.1566(d) & 416.966(d).

7

Fried, who determined that Plaintiff should avoid "Hazards (heights, machinery)"[3] (see R. 370) because the ALJ determined it to be "over credulous."[4] R. 22. As such, nothing in the ALJ's decision supports Plaintiff's contention that the ALJ's findings are inconsistent because resuming her previous work as a sewing-machine operator requires exposure to moving mechanical parts. Furthermore, the Court is unpersuaded by Plaintiff's argument that exposure to unguarded machinery is the same as exposure to moving mechanical parts. Simply put, Plaintiff's attempt to read the additional determination that Plaintiff should avoid exposure to moving mechanical parts into the ALJ's opinion is unfounded. Therefore, the Court finds that the ALJ's finding that Plaintiff can perform her past employment as a sewing-machine operator does not conflict with the finding that Plaintiff should avoid dangerous heights and unguarded machinery.

Nor is there error, as claimed by Plaintiff, because the ALJ failed to ask the VE to identify and explain the conflict between her testimony and information contained in the DOT. SSR 00-4p requires a "reasonable explanation" for any conflicts between VE

---

[3] During Dr. Fried's examination, Plaintiff indicated that she could not lift more than ten pounds, that she had difficulty combing her hair and opening jars, that she cannot write for extended periods, and that she was fatigued. R. 367. Dr. Fried opined that "[Plaintiff] is on narcotics which may interfere with alertness . . . [or her ability to] operate dangerous machinery." Id. Ultimately, Dr. Fried determined that, as a result of Plaintiff's decreased strength, she should avoid "Hazards (heights, machinery)." See R. 370.

[4] When determining that Plaintiff could resume her previous work as a sewing-machine operator, the ALJ gave "great weight" to the opinion of Dr. Gerardo H. Guzman, an opinion which is somewhat inconsistent with Dr. Fried's assessment. See R. 24-26. Dr. Guzman indicated that, although Plaintiff complained of occasional pain in her legs, she had no complaints concerning her upper extremities. R. 234-35. Dr. Guzman determined that Plaintiff had normal range of motion and strength in her upper extremities, normal grip in both hands, and was able to stand on her heals and tiptoes without difficulty. R. 236.

8

testimony and information in the DOT. Prior to the issuance of SSR 00-4p, the Eleventh Circuit clarified, "We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT. We so hold because the DOT 'is not the sole source of admissible information concerning jobs.'" Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999). While the applicability of this ruling from Jones after the issuance of SSR 00-4p is not entirely clear, other courts have required the ALJ "to elicit an explanation for an apparent conflict [with the DOT] from the VE before relying on the VE's evidence." Estrada v. Barnhart, 417 F. Supp. 1299, 1303 & n.5 (M.D. Fla. 2006).

Here, the ALJ was not required to ask the VE to identify or explain conflicts between her testimony and information contained in the DOT because no conflicts existed.[5] According to Plaintiff, the ALJ's determination that she could resume her previous work as a sewing-machine operator was based on the VE's testimony that work as a sewing-machine operator does not require exposure to hazards. (Doc. no. 14, p. 18). At the July 13th Hearing, the VE stated, "In terms of sewing machine operator, *avoid hazards*, vibrating -- well, you know, you could consider, you could even consider a sewing[-]machine as a vibrating machine." R. 77 (emphasis added). Clearly, the VE indicated that work as a sewing-machine operator involved exposure to hazards. Although the VE suggested that a sewing-machine "could" be considered a "vibrating machine," the VE did not testify that the hazards associated work as a sewing-machine operate included "vibration." Id. Indeed, the

---

[5]According to the DOT, work as a sewing-machine operator requires exposure to loud noises and occasional proximity to moving mechanical parts. (Doc. no. 14, p. 29).

9

VE later clarified, "[A sewing-machine] would not be a heavily-vibrating machine." Id. As such, the VE's testimony did not conflict with the information contained in the DOT, and thus, the ALJ did not err by failing to ask the VE to identify and explain conflicts.

In sum, the ALJ's finding that Plaintiff needed to avoid dangerous heights and unguarded machinery is not inconsistent with the finding that she could resume work as a sewing-machine operator. Furthermore, the VE's testimony did not conflict with information contained in the DOT, and thus, the ALJ did not err by failing to ask the VE to identify and explain conflicts between her testimony and information contained in the DOT. As such, the ALJ properly determined that Plaintiff could resume her previous work as a sewing-machine operator.

### B. The ALJ Properly Discounted the Opinions of the State Agency Psychologists

Next, the Court turns its attention to Plaintiff's argument that the ALJ erred in discounting the opinions of two State Agency psychologists.[6] Plaintiff argues that the ALJ erred in discounting these opinions because there was no conflict between the assessments of the State Agency psychologists and the records of Plaintiff's treating psychiatrists. (Doc. no. 14, p. 22). The Commissioner counters that the ALJ reasonably considered the opinions of the State Agency psychologists and declined to accept them, to the extent that they suggested greater mental limitations than those established in Plaintiff's psychiatric record.

---

[6]Celine Payne-Geir, Ph.D., and Cal VanderPlate, Ph.D., non-examining State Agency psychologists, reviewed Plaintiff's file in April and July 2004, respectively, and concluded that Plaintiff had "moderate" limitations in various mental activities (R. 249-52 & 253-66) that prevented her from performing her past employment (R. 182).

10

(Doc. no. 16, p. 13). As the Commissioner argues, and the Court agrees, rather than fully accepting the opinions of the State Agency psychologists, the ALJ properly chose to accord substantial weight to the records of Plaintiff's treating psychiatrists,[7] which indicate that Plaintiff was less restricted than the State Agency psychologists opined.[8]

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr, 816 F.2d at 581. "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating

---

[7]Plaintiff received treatment from psychiatrists at the Community Mental Health Center of Middle Georgia ("CMHC") during the period relevant to the above-captioned case. R. 298-316 & 366.

[8]The Commissioner also argues that, even if the ALJ had fully accepted the opinions of the State Agency psychologists, the ALJ's findings would have remained unchanged. (Doc. no. 16, p. 17). However, this Court cannot engage in an administrative review that was not done in the first instance by the Commissioner via the ALJ. Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (explaining that it would be "inappropriate on judicial review for the first time to apply administrative criterial not themselves considered by the [Commissioner]"). Thus, this argument is without merit.

11

physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

As to findings of fact made by State Agency medical and psychological consultants regarding the nature and severity of an individual's impairments, according to SSR 96-6p, these findings must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. Although ALJs are not bound by the findings of State Agency physicians, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions."[9] SSR 96-6p. The responsibility to address the opinions of state agency physicians is also codified at 20 C.F.R. §§ 404.1527(f) and 416.927(f)(2)(i). Clearly, the ALJ considered the opinions of the State Agency psychologists and explained the weight accorded to these opinions. R. 25-26. Thus, the Court will now address whether, in light of Plaintiff's psychiatric records, the ALJ properly discounted the opinions of the State Agency psychologists.

### 1. The ALJ Properly Determined that Plaintiff's Psychosis Improved

Plaintiff challenges the ALJ's decision to discount State Agency psychologists opinions, which indicated that Plaintiff has mental limitations that preclude her from resuming her past work, because she argues that the ALJ mistakenly determined that her psychosis was cured after a short time. (Doc. no. 14, p. 22). Plaintiff submits, "The whole

---

[9]However, a consultive psychologist's opinion may be properly discounted, if it is unsupported by findings of the treating psychiatrists. Crawford, 363 F.3d at 1160.

picture shows [her] psychotic symptoms . . . came and went [repeatedly]," and thus, her psychiatrists continued to prescribe antidepressant and antipsychotic medication through December 2005. (Id.). The Commissioner counters that Plaintiff's psychiatric records support the ALJ's determination that her psychosis improved and that, although her diagnosis was continually listed as depression with psychotic features and she was prescribed medication, diagnosis alone does not reflect condition severity. (Doc. no. 16, pp. 14-15).

When discounting the opinions of the State Agency psychologists, the ALJ noted,

> Medical records reflect that [Plaintiff] was seen at the [CMHC] from April 2003 to March 2005 with complaints of symptoms of anxiety and depression, (not schizophrenia) . . . . By March 2005, [Plaintiff] . . . denied any audiovisual hallucinations . . . . The assessment was that she was stable on current mental health regime.
>
> . . . .
>
> The record discloses [Plaintiff] was initially diagnosed with psychosis and post-traumatic stress disorder in April 2003 by a treating psychiatrist, but there is no evidence to conclude that these conditions have met the 12 month duration requirement within the meaning of the Act. The record discloses that by May 2003, [Plaintiff] reported she was much improved and her psychosis symptoms had gone away. Beginning May 2003 to May 2005 [Plaintiff] was diagnosed only with depressive disorder and was noted to be improving and stable on mental health medications.

R. 22-23 (internal citations omitted). The ALJ also found that, although Plaintiff testified that she heard voices a month ago and three times in the previous year,

> there are no medical records to support her allegations. Beginning May 2003, mental health records indicated that [Plaintiff] denied any psychotic symptoms. At the time of her most recent mental health treatment in May 2005, it was noted that she denied . . . hallucinations. Her condition was

> described as stable on current mental health regimen. She indicated that she
> is taking Lexapro and Rizban for her symptoms.[10]

R. 25 (internal citations omitted).

On this point, examination of Plaintiff's psychiatric records supports the ALJ's decision to discount the opinions of the State Agency psychologists. Although Plaintiff was diagnosed with depressive, psychotic, and posttraumatic stress disorders by Dr. Margaret Miller on April 30, 2003, Dr. Miller also stated, "I will be continuing to evaluate [Plaintiff's] 'auditory hallucinations.' I am very unclear whether these are actual auditory hallucinations needing medications . . . ."[11] R. 315-16. On May 16, 2003, Dr. Miller indicated that Plaintiff denied audiovisual hallucinations at night, that Plaintiff's condition was "much improved," and that Plaintiff's "'psychotic symptoms' have gone away." R. 311. From July 2003 until May 2005, Plaintiff's treating psychiatrists indicated that Plaintiff was either improving or

---

[10]Plaintiff takes the ALJ to task for his reference to "Rizban" in the ALJ's decision. (Doc. no. 14, p. 22). According to Plaintiff, the fact that the ALJ referred to "a nonexistent medication - implies [the ALJ] may not even be familiar with Risperdal, or aware it is an antipsychotic." (Id.). The Commissioner submits that, although the ALJ misspelled the Risperdal, "this is a harmless error because [the ALJ's] overall conclusion was correct when he found that Plaintiff was stable on her medication regime and had no recent complaints related to psychosis." (Doc. no. 16, p. 15). The Court notes that "Risperidon" is sold under the trade-name of "Risperdal" in the United States. Full U.S. Prescribing Information, Risperdal, http://www.risperdal.com/risperdal/pages/prescribing.jsp (last visited Dec.19, 2007). "Risperidon" is also sold under other trade-names in other parts of the world, including "Rispen." Risperidone, Wikipedia, http://en.wikipedia.org/wiki/Rispen (last visited Dec. 19, 2007). Regardless, when referencing "Rizban," the ALJ was describing the "mental health regimen" Plaintiff was prescribed as a result of her condition, which was diagnosed as depression with psychotic features. R. 25. Thus, although the ALJ may have misspelled Risperdal, it appears that the ALJ is familiar with Risperdal and aware that it is antipsychotic medication.

[11]Dr. Manuel Lucero and Dr. James Kirkland also treated Plaintiff from July 17, 2003 until December 8, 2005. R. 298-310 & 384-87.

14

stable on her mental health regimen. R. 298-310 & 366. During Plaintiff's May 10, 2005 examination, Dr. Kirkland noted that Plaintiff denied any hallucinations and that Plaintiff remained stable on her medication. R. 366.

In discounting the opinions of the State Agency psychologists, the ALJ properly determined that Plaintiff's records from her treating psychiatrists indicate that her psychosis had improved. Although Dr. Payne-Geir found that Plaintiff's ability to complete normal work-periods without interruptions from psychologically based symptoms was moderately limited (R. 250), the records of Plaintiff's treating psychiatrists do not support this opinion. Indeed, as noted above, Plaintiff's psychiatric records indicate that, from July 2003 until May 2005, she was either improving or stable. R. 298-310 & 366. Although the record reveals that, on October 7, 2003, Plaintiff was prescribed Risperdal after she complained about auditory hallucinations (R. 308), Plaintiff indicated, on January 11 and May 5, 2005, that she no longer suffered from hallucinations (R. 299 & 366) and that she was satisfied with her medication (R. 300). As such, the ALJ properly discounted the State Agency psychologists' opinions that Plaintiff had mental limitations that precluded her from resuming her past work because Plaintiff's psychiatric records suggest that her condition had improved.

### 2. The ALJ Properly Determined that Plaintiff's GAF Improved

Plaintiff next challenges the ALJ's decision to discount the State Agency psychologists' opinions because she argues that the ALJ mistakenly determined that her Global Assessment of Functioning ("GAF")[12] score significantly improved after the State

---

[12] According to the parties, the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (American Psychiatric Association, 4th ed.) describes the GAF as a scale used by mental heal professionals to rate the social, occupational, and psychological functioning of individuals.

15

Agency psychologists provided their opinions. (Doc. no. 14, pp. 22-23). Plaintiff submits that treatment notes reviewed by the State Agency psychologists indicated that, from May until the end of 2003, her GAF score was 61. (Id. at 23). Although Plaintiff concedes that her GAF score later increased to 63, she maintains that her increased GAF score is the result of her unemployment status. (Id.). As such, Plaintiff concludes that the ALJ mistakenly discounted, based on her GAF score, the opinions of the State Agency psychologists. (Id.). The Commissioner counters that, although the AJL never suggested that the State Agency psychologists were unaware of Plaintiff's GAF scores, the ALJ used the scores to support the determination that she was less restricted than the State Agency psychologists opined. (Doc. no. 16, p. 16). Furthermore, the Commissioner submits that Plaintiff's psychiatric records do not support her conclusion that her GAF score improved because she was unemployed, but rather that it increased as a result of mental health treatment. (Id.).

As the Commissioner correctly notes, the ALJ's decision does not appear to reference the State Agency psychologists' knowledge, or lack thereof, as it relates to Plaintiff's GAF scores. Rather, in light of Plaintiff's "benign treating GAF 60+ treating psychiatrist records," the ALJ decided to discount the opinions of the State Agency psychologists.[13] R. 24. Discussing Plaintiff's GAF score, the ALJ merely states, "[Plaintiff] was diagnosed with

---

(See doc. no. 14, p. 12; doc. no. 16, p. 5).

[13]As previously noted, the State Agency psychologists determined that Plaintiff had "moderate" limits in various mental activities that prevented her from prevented her from performing her past employment. R. 182, 249-52 & 253-66. However, the ALJ determined that Plaintiff had "mild limits on her ability to understand, remember, and carry out detailed tasks and stay on tasks" and "mild difficulties in interacting with the general public, co-workers, and supervisors . . . ." R. 24.

major depressive disorder, recurrent, moderate, with psychotic features and assessed with a GAF [score] at 63." R. 22 (internal citations omitted). Furthermore, citing the <u>Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition</u>, the ALJ noted, "this rating indicates 'some mild symptoms . . . or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'" R. 22. Ultimately, the ALJ determined that the Plaintiff's GAF scores indicated she was less restricted than the State Agency psychologists opined. R. 22-24.

Examination of Plaintiff's psychiatric records, as they relate to her GAF scores, supports the ALJ's decision to discount the opinions of the State Agency psychologists. Although Dr. Miller found that "[Plaintiff's] memory . . . seemed to be very good" and that Plaintiff was able to concentrate "very well," Dr. Miller initially determined Plaintiff's GAF score to be 55. R. 315. On May 16, 2003, after Plaintiff began mental health treatment, her GAF score raised to 61. R. 311. In April and July, 2004, while Plaintiff's GAF score was still 61, the State Agency psychologists assessed Plaintiff's condition. R. 249-66. Thereafter, Plaintiff's GAF score increased to 63. R. 300-01. As such, it appears that the State Agency psychologists did not have access to all of the information utilized to determine Plaintiff's restrictions. Furthermore, nothing in the record supports Plaintiff's proposition that her GAF increased as a result of her unemployment status. During the time period relevant to this matter, Plaintiff remained unemployed. Notably, Plaintiff was receiving mental health treatment during the time period when her GAF scores increased. R. 298-311 & 366. Therefore, the ALJ's decision to discount the opinions of the State Agency

psychologists is supported by Plaintiff's psychiatric records, which demonstrate Plaintiff's GAF score increased after the State Agency psychologists provided their opinions.

In sum, the Court finds that the substantial evidence supports the ALJ's determination that Plaintiff's psychosis improved and that she was less restricted than the State Agency psychologists opined. Therefore, the ALJ properly discounted the opinions of the State Agency psychologists, to the extent that they were inconsistent with the records from Plaintiff's treating psychiatrists.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 11th day of January, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE